25CA1413 Marriage of Jackson 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1413
El Paso County District Court No. 21DR31859
Honorable Jill Brady, Judge

In re the Marriage of

Cody Jackson,

Appellant,

and

Stephanie Jackson n/k/a Stephanie Bacon,

Appellee.

ORDER AFFIRMED

Division III
Opinion by JUDGE JOHNSON
Freyre and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Modern Family Law, Craig R. Valentine, Kresten L. Hendrix, Colorado Springs, Colorado, for Appellant

Stephanie Jackson n/k/a Stephanie Bacon, Pro Se

¶ 1     Cody Jackson (father) appeals the district court's order surrendering jurisdiction of its child-custody determination made under the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA) to California after concluding that Colorado was an inconvenient forum.[1]  Father contends the district court erred by (1) applying the UCCJEA inconvenient forum section because those provisions only applies if no child-custody determination has been made and (2) declining his request for attorney fees.  We disagree and, therefore, affirm the district court's order.

## I.     Background

¶ 2     In 2022, father and Stephanie Jackson, n/k/a Stephanie Bacon (mother), divorced in Colorado and subsequently adopted a parenting plan concerning their two minor children.  The plan contemplated that mother and the children would reside primarily

---

[1] Colorado has adopted the Uniform Child-custody Jurisdiction and Enforcement Act, a "detailed and comprehensive framework that a court must use to determine whether it may exercise jurisdiction in a child custody matter, or whether it may (or, in some cases, must) defer to a court of another state." *People in Interest of C.L.T.*, 2017 COA 119, ¶ 16.  The statute is codified at sections 14-13-101 to -403, C.R.S. 2025.

in California while father would remain in Colorado and could exercise his parenting time during the summer and holidays.

¶ 3     In 2024, mother filed a case in California concerning, as relevant here, jurisdiction of the child-custody determination.  A UCCJEA conference was then held between the parties, the California court, and the district court, after which the district court held an evidentiary hearing regarding its jurisdiction.  The district court issued an oral ruling after the hearing and, later, a written order (1) relinquishing jurisdiction over the child-custody determination and concluding that California was a more convenient forum under section 14-13-207, C.R.S. 2025; and (2) denying father's request for attorney fees.  Father now appeals.

## II.     Standard of Review and Applicable Law

¶ 4     We review issues of statutory interpretation de novo.  *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22.

¶ 5     In interpreting a statute, our primary aim is to "effectuate the legislature's intent."  *Nieto v. Clark's Mkt. Inc.*, 2021 CO 48, ¶ 12. We "look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary

2

meanings." *Blooming Terrace No. 1, LLC v. KH Blake St., LLC*, 2019 CO 58, ¶ 11 (quoting *UMB Bank*, ¶ 22).

### III.    UCCJEA Jurisdiction

¶ 6      Father asserts that the district court erred by surrendering jurisdiction of its child-custody determination under section 14-13-207, as he alleges that only section 14-13-202, C.R.S. 2025, applies.

### A.    Preservation

¶ 7      As an initial matter, mother contends that father failed to preserve this issue for appeal.  We disagree.

¶ 8      To preserve an argument for appeal, a party must present the "sum and substance of the argument" to the district court. *Marquez v. Schaefer*, 2025 COA 44, ¶ 30 (quoting *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25).

¶ 9      During the evidentiary hearing, father asked the district court to maintain jurisdiction over its child-custody determination under section 14-13-202, a request the district court denied in its written order relinquishing jurisdiction of its child-custody determination to California.  In his closing argument, father's counsel reiterated that "what the [district] court has to find in order to relinquish

jurisdiction" is based on section 14-13-202. We conclude that this argument sufficiently presented the "sum and substance" of father's contention to the district court to preserve this issue for appeal. *Marquez*, ¶ 30 (quoting *Gebert*, ¶ 25).

## B. Analysis

¶ 10    Father maintains that once a district court has made a child-custody determination under section 14-13-202, it has exclusive, continuing jurisdiction over its determination unless subsection (1)(a) or (1)(b) of that statute is satisfied. Father relies on the language in section 14-13-202 that uses the past tense — "*has made* a child-custody determination," § 14-13-202(1)-(2) (emphasis added) — while section 14-13-207 uses the present tense — "*to make* a child-custody determination," § 14-13-207(1) (emphasis added) — for his statutory interpretation that section 14-13-202 does not contemplate relinquishing jurisdiction of an already-made child-custody determination under section 14-13-207 for inconvenient forum.

¶ 11    Section 14-13-202(1) says, "[A] court of this state that *has made* a child-custody determination consistent with section 14-13-201 or 14-13-203 has exclusive, continuing jurisdiction over the

4

determination until" either subsection (1)(a) or (1)(b) is satisfied. (Emphasis added.) Section 14-13-207(1) says, "A court of this state that has jurisdiction under this article *to make* a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." (Emphasis added.)

¶ 12　Both parties concede, and we agree, that neither of the exceptions in section 14-13-202(1)(a)-(b) applies. Those provisions deal with circumstances where either, as relevant here, "the child [and] the child's parents . . . do not have a significant connection with this state and . . . substantial evidence is no longer available in this state" about the child or "the child [and] the child's parents . . . do not presently reside in this state." *Id.* But father still lives here and exercises his parenting time in Colorado, so the children return to this state for summers and holidays.

¶ 13　While we agree with father that the court did not lose jurisdiction over the child-custody determination under section 14-13-202, we disagree with him that the court could not decline to

5

exercise jurisdiction under section 14-13-207. We reach this conclusion for three reasons.

¶ 14    First, we disagree with father's assertion that our reading of section 14-13-207 would render section 14-13-202's exceptions meaningless. Section 14-13-202 contemplates circumstances in which the district court *loses* jurisdiction of the child-custody determination to another state because no party subject to that order has substantial contacts with this state anymore. *See Colo. State Bd. of Med. Exam'rs v. Lopez-Samayoa*, 887 P.2d 8, 14 (Colo. 1994) (noting it is well established that any action taken by a court that is without jurisdiction is void); *see also In re Marriage of Pritchett*, 80 P.3d 918, 921 (Colo. App. 2003) (concluding that Colorado lacked jurisdiction to rule on a second contempt citation involving a child-custody order after jurisdiction was transferred to another state). But section 14-13-207 contemplates that a Colorado court maintains jurisdiction over the case but "declines" to exercise it because a more convenient forum now exists. *See Miller v. Mathias*, 52 A.3d 53, 73 (Md. 2012) (holding that the district court there was not precluded from conducting an inconvenient forum analysis simply because it had jurisdiction

6

under the UCCJEA — rather, Maryland's version of section 14-13-207 required it to do so).

¶ 15     This explains why a court may be able to make a section 14-13-207 determination "at any time" because family circumstances change, which may render this forum inconvenient, even though a party — like father — continues to have contacts with this state. Likewise, although father did not appeal the merits of the district court's jurisdictional order, his belief that mother is forum shopping is also contemplated under our statutory interpretation. A party attempting to forum shop could be one of many reasons why a district court in this state might retain jurisdiction over the case even if another state could conceivably exercise jurisdiction. And the UCCJEA authorizes courts to take into consideration a party's possible "unjustifiable conduct" when determining whether a state should retain jurisdiction or another state should decline jurisdiction. § 14-13-208(1), C.R.S. 2025. Thus, section 14-13-207's use of the word "decline" contemplates a court's discretionary consideration of that and many other factors when deciding whether to retain jurisdiction. *See* § 14-13-207(2)(a)-(h) (listing six factors for the court to determine which court is the most

appropriate forum); *see also In re M.M.V.*, 2020 COA 94, ¶ 17 ("The primary aim of the UCCJEA is to prevent competing and conflicting custody orders by courts in different jurisdictions" given "an increasingly mobile society.").

¶ 16     Second, father's interpretation does not take the UCCJEA's definitions into consideration.  The UCCJEA defines a "child-custody determination" to "include[] a permanent, temporary, initial, *and modification order.*"  § 14-13-102(3), C.R.S. 2025 (emphasis added).  Consistent with this broad definition, section 14-13-207 can also be read as "to make a [modification order of an initial] child-custody determination."  Thus, our interpretation resolves any perceived discrepancy in tense between the two sections and gives sensible effect to all of the statute's parts.  *See Blooming Terrace*, ¶ 11; *see also People in Interest of B.H.*, 2021 CO 39, ¶¶ 34, 37 (referencing the definition of "child-custody determination" to include temporary orders but also interpreting those types of orders broadly when dealing with child-custody issues); § 14-13-203, C.R.S. 2025 (describing the process to modify a child-custody determination made by another state).

¶ 17    Third and finally, we likewise disagree with father's contention that our interpretation of the statute would conflict with section 14-13-207(3)'s language requiring a district court to "stay the proceedings upon condition that a child-custody proceeding be promptly commenced in [the more convenient forum state]." Nothing in section 14-13-207 implies that a court's stay order is cabined only to proceedings where no child-custody determination has been made.  We simply read that provision to be a practical transfer mechanism so the parties do not have a gap in which they are subject to a child-custody determination during the time the case transfers to the other state.[2]

¶ 18    Thus, the district court correctly determined that it could decline to exercise jurisdiction of its child-custody determination

---

[2] Because the General Assembly's intent can be determined by interpreting the statute's plain language, we do not address father's request to review the UCCJEA's statutory history.  *See McIntire v. Trammell Crow, Inc.,* 172 P.3d 977, 979 (Colo. App. 2007) (holding that if a statute is clear and unambiguous on its face, courts need not look beyond the plain language and must apply the statute as written); *see also Smith v. Exec. Custom Homes, Inc.,* 230 P.3d 1186, 1189 (Colo. 2010) (holding that if a statute is unambiguous, courts do not resort to legislative history).

after determining that California was the more convenient forum under section 14-13-207.

## IV. Attorney Fees

¶ 19     Father contends that the district court erred by denying his request that mother pay his attorney fees associated with the jurisdictional relinquishment hearing. We disagree.

¶ 20     We review the reasonableness of a district court's determination regarding attorney fees for an abuse of discretion. *Crandall v. City & County of Denver*, 238 P.3d 659, 661 (Colo. 2010).

¶ 21     Father contends that, had the district court applied his interpretation of the UCCJEA, he would have prevailed and mother's requested relief would have been rendered groundless and frivolous, entitling him to attorney fees under section 13-17-102(4), C.R.S. 2025. We disagree.

¶ 22     To be a prevailing party for the purpose of an award of attorney fees under that statute, the party "must have succeeded upon a significant issue presented by the litigation and must have achieved some of the benefits that he sought in the lawsuit." *In re Marriage of Watters*, 782 P.2d 1220, 1221 (Colo. App. 1989).

Father's arguments failed before the district court and here. Mother's requested relief was not groundless, frivolous, or lacking a substantial justification. As a result, father is not entitled to an award of attorney fees. *See Bruce v. Roberts*, 2016 COA 182, ¶ 13 (holding that a court considering whether to award attorney fees must begin with the American Rule, "which precludes an award of attorney fees absent a specific contractual, statutory, or procedural rule providing otherwise" (quoting *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005))), *aff'd*, 2018 CO 58.

## V.     Conclusion

¶ 23     The district court's order is affirmed.

JUDGE FREYRE and JUDGE KUHN concur.